IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHARON THOMAS,                          )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )   1:10CV226
                                        )
STATE OF NORTH CAROLINA, et al.         )
                                        )
            Defendants.                 )

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on Defendants' Motion for Remand (Docket Entry 5). For the reasons that follow, the Court will grant said motion.

BACKGROUND

On February 19, 2010, Plaintiff filed a pro se Complaint in the General Court of Justice, Superior Court Division, for Durham County, North Carolina. (Docket Entry 3.) Said pleading is not a model of clarity. (See id. at 1-4.) Under the heading "Jurisdiction," it begins with a sentence fragment stating that the action "arises under the constitution and laws of the state of North Carolina" and then recites language from 28 U.S.C. § 1332(a) regarding the amount in controversy and the existence of diversity of citizenship between the parties. (Id. at 1.)[1] Next, the Complaint appears to assert that the state court has jurisdiction

---

[1] The Complaint's language regarding diversity of citizenship conflicts with its identification of the addresses for both Plaintiff and Defendants as in Durham, North Carolina. (Docket Entry 3 at 2.)

under North Carolina General Statutes, Section 95-240,[2] the "public policy of North Carolina, and pursuant to the plaintiff being in receipt of a Right to Sue Letter, November 23, 2009 regarding Charge No.: 433-2009-01054." (Id. at 1-2.)

Under the heading "Statement of Claim," the Complaint declares:

> This complaint is a result of a charge of discrimination and receipt of a Right to Sue Charge No. 433-2009-01054 U.S. Equal Employment Opportunity Commission. This is a civil action . . . under common law and public policy of North Carolina. Plaintiff's claims arises [sic] from Defendants'' [sic] unlawful, [sic] termination as an act of Retaliation for advocating for a equal employment opportunity . . . [that] Plaintiff experienced during employment at North Carolina Central University.

(Id. at 2.) The Complaint thereafter sets out a few factual allegations about Plaintiff's involvement in a workplace dispute and her loss of her job. (Id. at 2-3.) According to the Complaint, based on the cited facts, "it is clear that the Plaintiff civil right [sic] were violated. It also indicates a need for the above law . . . to protect individuals from this type of discrimination." (Id. at 3.) Finally, in the request for relief (under the misnamed heading "Exhaustion of Administrative Remedies"), the Complaint asks for damages, inter alia, "to punish defendants for . . . callously disregard[ing] . . . [her] constitutional rights . . . ." (Id. at 4.)

---

[2] Said statute defines terms used in "[t]he North Carolina Retaliatory Employment Discrimination Act (REDA), N.C. Gen. Stat. § 95-241 et seq., [which] prohibits employers from discriminating or retaliating against employees based upon good faith claims for workers' compensation," Wiley v. United Parcel Serv., Inc., 102 F. Supp. 2d 643, 650 (M.D.N.C. 1999). The Complaint, however, alleges nothing about a workers' compensation claim. (See Docket Entry 3 at 1-4.)

-2-

At 2:57 p.m. on March 19, 2010, Defendants filed in this Court a Notice of Removal (the "Federal Notice") for the purpose of removing this action from state court to this Court. (Docket Entry 1.) The Federal Notice stated that 28 U.S.C. § 1441(a) and (b) provided authority for the removal on the ground that the Complaint implicated federal question jurisdiction by "alleg[ing] at least one claim under the laws of the United States, [such that] this Court has original jurisdiction over that claim [under] 28 U.S.C. § 1331." (Id. at 2.) Defendants noted the existence of some ambiguity as to the nature of the claim(s) in the Complaint, but pointed out that the Equal Employment Opportunity Commission charge cited as the basis for the action "alleged a Title VII claim for retaliation." (Id. at 2 & n.1.)[3] They served Plaintiff with the Federal Notice by mail. (Id. at 4.)

Along with the Federal Notice, Defendants also filed with this Court a copy of a separate Notice of Removal (the "State Notice") directed to the state court in which Plaintiff originally instituted the action. (Docket Entry 2.) The State Notice requested the state court to "forward to the United States District

---

[3] "Title VII of the Civil Rights Act of 1964 creates a federal cause of action for employment discrimination." Davis v. North Carolina Dep't of Correction, 48 F.3d 134, 136-37 (4th Cir. 1995). More specifically, Title VII prohibits an employer from taking certain adverse actions against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII also contains an "antiretaliation provision [that] forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).

-3-

Court a complete copy of the state court file." (Id. at 1.) The state court thereafter did so. (Docket Entry 7.) The documents from the state court file include a copy of the State Notice. (Id. at 1-2.)[4] The file-stamp on said document reflects that it was filed with the state court on March 22, 2010. (Id. at 1.)

The documents from the state court file also include an Amended Complaint bearing a file-stamp of 4:46 p.m. on March 19, 2010. (Id. at 3-11.) Although this Amended Complaint remains an unpolished product, it reflects a marked improvement from Plaintiff's original Complaint, both in terms of logical coherence and level of detail. (Compare Docket Entry 3 at 1-4 with Docket Entry 7 at 3-11.) In particular, the Amended Complaint clearly states Plaintiff's intent to assert a "violation of NCGA statue [sic] § 126-17. Retaliation by State departments and agencies and local political subdivisions: No State department, agency, or local political subdivision of North Carolina shall retaliate against an employee for protesting alleged violations of G.S. 126-16." (Docket Entry 7 at 5-6.)[5] The factual allegations in the Amended Complaint bear some relationship to this proposed cause of action in that they describe Plaintiff's employment in an administrative support position with North Carolina Central

---

[4] Because this filing contains multiple documents (many of which have their own pagination), page citations refer to the page numbers in the CM/ECF footer.

[5] North Carolina General Statutes, Section 126-16 codifies North Carolina's "state law prohibiting employment discrimination by state agencies," Davis, 48 F.3d at 134. It identifies "race, religion, color, creed, national origin, sex, age [of at least 40 years old], [and] handicapping condition" as the bases upon which state employers must not discriminate. N.C. Gen. Stat. § 126-16.

-4-

University School of Law, an incident in which a supervisor subjected Plaintiff to "verbal abuse," Plaintiff's complaint to officials at the Law School and/or University about that matter (including contact with an "EEO Officer"), Plaintiff's subsequent receipt of a negative performance evaluation and her internal complaints to Law School and/or University officials about same, Plaintiff's reporting of these matters to the "North Carolina Office of Administrative Hearing Civil Rights division," Plaintiff's further internal complaints to Law School and/or University officials (including her filing of a grievance), and the subsequent termination of Plaintiff's employment. (Id. at 6-10.)

On March 26, 2010, Defendants filed the instant Motion for Remand (with an attached copy of the Amended Complaint) and served it upon Plaintiff. (Docket Entry 5 at 1-4 and Ex. A.) In said motion, Defendants observed that "plaintiff's amended complaint clearly states that she is claiming retaliation and unlawful termination of her employment pursuant to N.C.G.S. § 126-17" and that, as a result, "it now appears that this Court lacks subject matter jurisdiction and that this case should be remanded to the Durham County Superior Court pursuant to 28 U.S.C. § 1447(c)." (Id. at 2.) The time for Plaintiff to respond to said motion, see M.D.N.C. R. 7.3(f) (requiring litigant, "if opposing a motion, [to] file a response, including brief, within 21 days after service of the motion"), has passed without Plaintiff filing any response. (See Docket Entries dated Mar. 26 through May 3, 2010.)

DISCUSSION

Because Plaintiff "fail[ed] to file a response within the time required by [this Court's Local Rule 7.3(f)], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. R. 7.3(k). In this case, the Court sees no reason to depart from the foregoing general rule. In particular, the Court agrees with Defendants that, "[i]nasmuch as plaintiff's amended complaint indicates that her claim arises under North Carolina state law, it now appears that this Court lacks subject matter jurisdiction and that this case should be remanded to the Durham County Superior Court pursuant to 28 U.S.C. § 1447(c)." (Docket Entry 5 at 2.)

The unusual procedural history of the case and the complexities of the law governing removal and remand, however, warrant some further explanation of this result. See generally Berberian v. Gibney, 514 F.2d 790, 792 (1st Cir. 1975) (observing that, in removal context, "[t]he chronology of the procedural events . . . [can] present[] . . . a prickly little technical problem"). Under federal law, a defendant may remove a civil action from state court to federal court if the complaint contains a claim that would trigger federal question jurisdiction. See 28 U.S.C. § 1441(a), (b), and (c). However, if a defendant removes an action from state court based on an erroneous conclusion that the complaint implicated federal question jurisdiction, the federal court must remand the case to state court. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district

court lacks subject matter jurisdiction, the case shall be remanded."). Thus, "[t]he general rule . . . is that a plaintiff is the 'master of the claim,' and he may 'avoid federal jurisdiction by exclusive reliance on state law' in drafting his complaint." Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). Accord Pendergraph v. Crown Honda-Volvo, LLC, 104 F. Supp. 2d 586, 588 (M.D.N.C. 1999) (citing Caterpillar Inc. in utilizing 28 U.S.C. § 1447(c) to remand action defendant removed from state court where plaintiff "complain[ed] that his employer . . . engaged in racial harassment, race-based disparate treatment, retaliation and other discriminatory conduct" in violation of state and local, but not federal, law).[6]

A plaintiff's ability to avoid a federal forum by acting as "master of the claim," however, extends only so far. For example, "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction." Rockwell Int'l Corp. v. United States, 549 U.S.

---

[6] Moreover, this case does not appear to "fall within the small class of 'cases in which a well-pleaded complaint establishes that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded claims.'" Pinney, 402 F.3d at 442 (internal ellipses omitted) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808 (1988)). In this regard, the Court notes that "the fact that state law independently espouses the same public policy established by Title VII does not transform Plaintiff's state law claims into federal causes of action." Pendergraph, 104 F. Supp. 2d at 589 & n.1 (observing that, given plain language of 42 U.S.C. § 2000e-7, "preclusion of a state or local forum to resolve employment discrimination disputes . . . would be contrary to the express purposes of Title VII").

457, 474 n.6 (2007). Instead, where an "<u>amendment occurred after removal</u>, [courts] look at the original complaint[] rather than the amended complaint[] in determining whether removal was proper." <u>Pinney</u>, 402 F.3d at 443 (emphasis added). In other words, although a plaintiff generally can avoid the prospect of removal by omitting any federal claim(s), a plaintiff who includes a federal claim in a complaint filed in state court cannot defeat removal of the action to federal court by belatedly amending the complaint to delete any federal claim(s) because the federal court will consider only whether the original complaint (not any post-removal amendment) included a federal claim.

As a result, where, as here, a plaintiff has amended her complaint in a manner that might affect the analysis of the existence of federal question jurisdiction (and thus the propriety of removal), it may become necessary to determine whether the "amendment occurred <u>after removal</u>," <u>id.</u> In order to make that determination, the Court must assess when removal occurs. The answer appears to lie in the statutory provisions establishing the procedure for removal. <u>See</u> 28 U.S.C. § 1446. Under this statute, "[f]irst, the defendant must file a notice of removal in the United States district court for the district . . . in which the state court action is pending. Second, promptly after filing the notice of removal [in federal court], the defendant must give written notice to adverse parties and must file a copy of the notice of removal with the clerk of the state court." <u>Burroughs v. Palumbo</u>, 871 F. Supp. 870, 871 (E.D. Va. 1994) (internal citations omitted)

(citing 28 U.S.C. § 1446(a) and (d)).  As to this final step, the statute specifically states:  "[The defendant] shall file a copy of the notice with the clerk of such State court, <u>which shall effect the removal</u> and the State court shall proceed no further unless and until the case is remanded."  28 U.S.C. § 1446(d) (emphasis added). The United States Court of Appeals for the Fourth Circuit has held that, under this statute, a state court "loses all jurisdiction to proceed immediately upon the filing of the petition in the federal court <u>and</u> a copy in the state court."  <u>South Carolina v. Moore</u>, 447 F.2d 1067, 1073 (4th Cir. 1971) (emphasis added).

"The obvious inference from the statute and the Fourth Circuit holding is that the state court maintains jurisdiction over the action until the state court receives actual notice of removal." <u>Burroughs</u>, 871 F. Supp. at 872 (ruling that "there [i]s concurrent state and federal jurisdiction during the period between the filing of the notice of removal in federal court and in state court" and that default judgment entered in state court during period of concurrent jurisdiction "must be treated as if entered by this [federal court]" (citing <u>Berberian</u>, 514 F.2d at 792-93)).  "Once the notice of removal has been effectively filed <u>in both courts</u>, the federal court takes the case in the posture in which it departed the state court, treating everything done in the state court as if it had been done in federal court."  <u>Holmes v. AC & S, Inc.</u>, 388 F. Supp. 2d 663, 667 (E.D. Va. 2004) (emphasis added).

Accordingly, because Plaintiff filed her Amended Complaint before the state court received the State Notice, the amendment

-9-

occurred before, not after, removal. See, e.g., Hampton v. Union Pacific R.R. Co., 81 F. Supp. 2d 703, 704-07 & nn. 5-6 (E.D. Tex. 1999) (citing decisions from numerous courts in support of holding that plaintiff's filing in state court of amended complaint that added non-diverse defendant before original defendant's completion of Section 1446's removal process foreclosed federal jurisdiction thus requiring remand and quoting 14C Charles A. Wright et al., Federal Practice and Procedure, § 3737 (3d ed. 1998), for proposition that "sounder rule, and the one most consistent with the language of Section 1446(d) of Title 28 is that removal is not effective until all the steps required by the federal statute have been taken by the defendant"); Coding Prods., Inc. v. Homco Int'l, Inc., No. 4:94CV143, 1995 WL 423853, at *2 (W.D. Mich. Dec. 2, 1994) (unpublished) ("The language of [Section 1446(d)] clearly implies that actions taken in state court until the notice is filed there (including the amendment of a complaint) are effective. This view is supported by a majority of federal courts which have addressed the question of when a notice of removal becomes effective. It is not surprising that many courts hold this view since it would seem unjust to disregard actions taken in state court prior to the state court's receiving notice of the removal. Therefore, the Court concludes that the removal was not fully effected until after the amendment of the complaint to include a non-diverse party." (internal citations omitted)).

The Court has identified three decisions that conflict with the above-described majority view that state court filings made

-10-

between the filing of removal notices in federal and state court remain effective even if such filings have the potential of foreclosing federal jurisdiction. See Barrett v. Southern Ry. Co., 68 F.R.D. 413, 419-20 (D.S.C. 1975) (following Master Equip. Inc. v. Home Ins. Co., 342 F. Supp. 549, 552 (E.D. Pa. 1972), and Hornung v. Master Tank & Welding Co., 151 F. Supp. 169, 172 (D.N.D. 1957)). These courts conclude that the filing of the removal notice with the state court "retroactively" effects removal back to the date of the filing of the notice in federal court and that such action negates any activity that occurred in state court in the interim, if that activity would undermine federal jurisdiction. See id. None of the three decisions offers any logical rationale for that view.[7] Further, as the contrary authority cited above indicates, such an approach conflicts with the plain language of Section 1446(d) and manifests a lack of respect for state courts. See, e.g., Hampton, 81 F. Supp. 2d at 707 & nn. 5-6; Burroughs, 871 F. Supp. at 872; Coding Prods., 1995 WL 423853, at *2.

Moreover, given the ambiguity of Plaintiff's original Complaint, the Court's obligation to construe her pro se filings liberally to discern her intent, see MacKay v. City of Virginia Beach, No. 89-2010, 1989 WL 100709, at *1 (4th Cir. Aug. 17, 1989) (unpublished) (decision without opinion, 884 F.2d 1389) (stating

---

[7] To the extent the Barrett Court relied on statements in a prior version of a treatise, see Barrett, 68 F.R.D. at 419-20 (quoting 1A James W. Moore et al., Moore's Federal Practice ¶ 0.168), the Court notes that the current version of said treatise no longer appears to include such language, but instead cites Burroughs as establishing the appropriate rule in this context, see 16 James W. Moore et al., Moore's Federal Practice § 107.31[3] & nn. 13.1-13.2.

-11-

that "general rule that pro se filings are liberally construed" requires inquiry into litigant's "intent"), and the absence of any basis for finding that Plaintiff crafted her Amended Complaint in bad faith, even if removal was complete prior to the filing of the Amended Complaint, the Court could consider Plaintiff's clarification (via the Amended Complaint) that she sought to proceed under state, not federal, law. See Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 51-52 (1st Cir. 2009) ("[W]e may consider the plaintiffs' more specific and consistent statement [about their claims made after removal]. This specification is not an impermissible effort to defeat federal jurisdiction by narrowing the pleadings post-removal, but rather a fleshing out of the vague language of the [removed] complaint." (internal citations omitted)). See also id. at 52 (quoting statement in 14C Wright et al., supra, § 3725, that "an affidavit filed by a plaintiff's attorney subsequent to removal can be considered as a clarification of an ambiguous complaint, rather than a post-removal amendment of the plaintiff's complaint" (internal ellipses omitted)).

Finally, if the Court treated the Amended Complaint as a nullity, declined to consider it even as only a statement clarifying ambiguities in the original Complaint, and concluded that, in the original Complaint, Plaintiff alleged a federal claim such that removal was proper, this action still ultimately would be remanded to state court (albeit in an exercise of discretion, not pursuant to Section 1447(c)). See Dominion Healthcare Servs., Inc. v. Value Options, Inc., No. 1:08CV134, 2009 WL 580326, at *4-5 &

n.4 (M.D.N.C. Mar. 5, 2009) (unpublished) (granting plaintiff leave to amend complaint to dismiss federal claims and remanding action to state court pursuant to United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988), and Harless v. CSX Hotels, Inc., 389 F.3d 444, 448 (4th Cir. 2004), notwithstanding continued existence of jurisdiction over pendent state law claims). Accord Fleeman v. Toyota Motor Sales, U.S.A., Inc., 288 F. Supp. 2d 726 (S.D.W. Va. 2003); Kimsey v. Snap-On Tools Corp., 752 F. Supp. 693 (W.D.N.C. 1990).

Just as "it would be a waste of judicial resources to remand [removed] cases on the basis of an antecedent violation of the removal statute [if, through later developments] that [federal] jurisdiction has been established [because] . . . defendants would almost certainly remove the cases back to federal court in light of plaintiffs' [intervening] amend[ment] [of] complaints," Moffitt v. Residential Funding Co., LLC, ___ F. 3d ___, ___, 2010 WL 1782435, at *3 (4th Cir. 2010), so too would it be a waste of judicial resources to decline to remand this action at this point, to require Plaintiff to file her Amended Complaint in this Court (along with her own motion to remand), and then to remand the case to state court after declining to exercise pendent jurisdiction over the remaining state law claims. As the Fourth Circuit expressed it, "considerations of judicial economy weigh against such a pointless exercise . . . ." Id.

The Court commends Defendants and their counsel for promptly bringing this matter to the Court's attention, notwithstanding

-13-

their apparent preference for litigating this action in federal court. Some litigants might have been tempted (unwisely, in the Court's view) to see if the pro se Plaintiff or the Court would identify the issue. By raising this matter expeditiously, Defendants and their counsel demonstrated respect for this Court's interest in conserving its scarce resources and for Plaintiff's interest in securing prompt adjudication of her claim(s) (both of which might have been unnecessarily compromised if the case proceeded forward in this Court only to later wind up back in state court when this situation came to light). The conduct of Defendants and their counsel in this regard follows the best traditions of our legal system. See <u>Mancia v. Mayflower Textile Servs. Co.</u>, 253 F.R.D. 354, 361-62 (D. Md. 2008) (quoting Lon L. Fuller & John D. Randall, <u>Professional Responsibility: Report of the Joint Conference</u>, 44 A.B.A. J. 1159, 1162, 1216 (1958), for propositions that, in litigation, "partisan advocacy is a form of public service so long as it aids the process of adjudication; it ceases to be when it hinders that process, when it misleads, distorts and obfuscates, when it renders the task of the deciding tribunal not easier, but more difficult" and that a "lawyer's highest loyalty . . . runs, not to persons, but to procedures and institutions . . . [like] a trusteeship for the integrity of those fundamental processes of government and self-government upon which the successful functioning of our society depends").

Given that this action should be remanded to state court, the question becomes how to accomplish that end. Because Congress has

not identified motions for remand as among the pretrial matters that magistrate judges must address by recommendation, an order will be entered. See 28 U.S.C. § 636(b)(1)(A) (authorizing "a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action" (emphasis added)); 28 U.S.C. § 636(b)(1)(B) (permitting "a magistrate judge . . . to submit . . . recommendations for the disposition . . . of any motion excepted in subparagraph (A)"). See also Aluminum Co. of America, Badin Works v. EPA, 663 F.2d 499, 501 (4th Cir. 1981) (observing that "exceptions [in Section 636(b)(1)(A)] are motions which Congress considered to be 'dispositive'"); Everett v. Cherry, 671 F. Supp. 2d 819, 821 n.4 (E.D. Va. 2009) ("Section 636(b)(1) enumerates those pre-trial matters that, if referred to a magistrate judge, must be reviewed de novo by a district judge upon objection. The Court will not make the unprincipled decision to rewrite the statute, adding [other motions] to those pre-trial matters, for that is the province of Congress.").[8]

---

[8] The distinction between order and recommendation may make little, if any, practical difference in this context; the assigned United States District Judge's review of the undersigned Magistrate Judge's legal conclusion that remand should
(continued...)

Two United States District Judges of this Court recently have noted that the Fourth Circuit has not yet addressed directly the question of whether a magistrate judge must make only a recommendation as to a motion for remand. See Canadian American Ass'n of Prof'l Baseball, Ltd. v. Ottawa Rapidz, ___ F. Supp. 2d ___, ___ n.2, 2010 WL 675134, at *2 n.2 (M.D.N.C. 2010) (Schroeder, J.); Insteel Wire Prods. Co. v. Dywidag Sys. Int'l USA, No. 1:07CV641, 2009 WL 2253198, at *1 n.1 (M.D.N.C. July 28, 2009) (unpublished) (Beaty, C.J.). In each of those cases, the Court did not decide the issue of a magistrate judge's authority to enter an order disposing of a motion to remand, because the magistrate judge in each case had chosen to proceed by way of recommendation. See id.[9] In his opinion, however, Judge Schroeder did take note of the decision in Wachovia Bank, N.A. v. Deutsche Bank Trust Co.

---

[8](...continued)
occur in this case due to lack of subject matter jurisdiction likely would take the same shape whether conducted under the "contrary to law" provision of Section 636(b)(1)(A) (applicable to non-excepted pretrial rulings) or under the de novo standard that governs review of recommendations under Section 636(b)(1)(B). See, e.g., Haines v. Liggett Group Inc., 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law.").

[9] Although in those two cases, the assigned Magistrate Judges proceeded by way of recommendation, in other cases, a Magistrate Judge of this Court has entered orders disposing of motions for remand. See Ada Liss Group v. Sara Lee Branded Apparel, No. 1:06CV610, 2007 WL 634083, at *5 & n.5 (M.D.N.C. Feb. 26, 2007) (unpublished) (Dixon, M.J.) (citing Johnson v. Wyeth, 313 F. Supp. 2d 1272 (N.D. Ala. 2004), and Wyatt v. Walt Disney World, Co., No. 5:97CV116-V, 1999 WL 33117255 (W.D.N.C. July 26, 1999) (unpublished), as providing "discussion of the authority of a Magistrate Judge to issue an order on a motion for remand"); Hunsucker v. United Furniture Indus., NC, LLC, No. 1:05CV44, 2005 WL 1114339, at *2 & n.3 (M.D.N.C. Apr. 27, 2005) (unpublished) (Dixon, M.J.) (same). The undersigned Magistrate Judge acknowledges that, in the only prior case involving a motion for remand he has handled, he failed to spot this issue and entered a recommendation, rather than an order. See Appatek Indus., Inc. v. Biolab, Inc., No. 1:09CV645, 2010 WL 731366 (M.D.N.C. Feb. 25, 2010) (unpublished).

Americas, 397 F. Supp. 2d 698 (W.D.N.C. 2005) (Thornburg, J.), which Judge Schroeder described as "conducting [an] extensive analysis of why a de novo standard of review is inapplicable to review of an order to remand entered by a Magistrate Judge." Canadian American Ass'n, ___ F. Supp. 2d at ___ n.2. The undersigned Magistrate Judge finds the analysis by now-retired Judge Thornburg in Wachovia Bank persuasive and relies on it as support for the decision to enter an order in this case.

In his opinion, Judge Thornburg acknowledged the "split of authority regarding a magistrate judge's ability to issue a remand order, with most district courts to have considered this issue having found remand to be within a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A) but with every appellate court that has weighed the issue having determined a remand to be the functional equivalent of a dispositive order, and therefore beyond a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A)." Wachovia Bank, 397 F. Supp. 2d at 701 (internal brackets, ellipses, and quotation marks omitted). Judge Thornburg thereafter carefully analyzed the opinions from the Third, Sixth, and Tenth Circuits requiring magistrate judges to address motions for remand by way of recommendation and found the reasoning therein unsound. See id. at 701-02. The undersigned Magistrate Judge agrees with Judge Thornburg's analysis, particularly as to Section 636(b)(1)'s plain language. See id. at 701 ("[T]he language of § 636(b)(1)(A) is exceedingly clear that a magistrate judge may 'hear and determine *any* pretrial matter pending before the court, *except*' a very

-17-

specific list of eight matters.  Congress would be hard-pressed to use language more clearly indicating its intent to create an exhaustive list than '*any . . . except*.'" (italics in original)).[10]

The undersigned Magistrate Judge generally would defer to the uniform position of multiple circuit courts on an issue, such as this one, as to which the Fourth Circuit has not spoken.[11]  In this case, however, Judge Thornburg has provided a more persuasive counter-view.  See Franklin v. City of Homewood, Civil Action No. 07-TMP-006-S, 2007 WL 1804411, at *1-4 (N.D. Ala. June 21, 2007) (unpublished) (holding, after thorough analysis, that Wachovia Bank and like decisions from other district courts contained reasoning "more persuasive than that of the Third, Sixth, and Tenth Circuits and determin[ing] that a motion to remand is a non-dispositive issue and within the authority of a magistrate judge").[12]

---

[10] Since the decision in Wachovia Bank, the Second Circuit has aligned itself with the Third, Sixth, and Tenth Circuits; however, in doing so, said court neither engaged in any independent analysis nor confronted the shortcomings in the prior circuit court rulings identified by Judge Thornburg.  See Williams v. Beemiller, Inc., 527 F.3d 259, 264-66 (2d Cir. 2008).  As a result, the Second Circuit's decision does not alter the undersigned Magistrate Judge's conclusion that an order, not a recommendation, should be issued in this case.

[11] That said, a judge of the Fourth Circuit rightly has observed that the uniform view of the circuit courts is not always the correct view, at least not as adjudged by the United States Supreme Court.  See McMellon v. United States, 387 F.3d 329, 361 n.3 (4th Cir. 2004) (Motz, J., concurring in part and dissenting in part) ("I note that agreement among the courts of appeals on an issue . . . does not invariably garnish Supreme Court approval.  Rather, the Court often rejects a view previously adopted by a number of the circuit courts.  Indeed, not infrequently the Court disagrees with the nearly unanimous view of the circuits." (internal citations omitted)).

[12] Although they have not set out detailed examinations of the competing merits of Wachovia Bank and the contrary circuit authority, other judges also have followed Judge Thornburg's ruling.  See, e.g., Lomick v. LNS Turbo, Inc.,
(continued...)

Moreover, as to another motion not listed in Section 636(b)(1)(A) (i.e., a motion to amend a complaint), the circuit courts that have spoken have found that magistrate judges may enter orders, notwithstanding the theoretical "dispositive" nature of such rulings (and have cited the plain language of Section 636(b)(1) in support of that position). See Hall v. Norfolk Southern Ry. Co., 469 F.3d 590, 595 (7th Cir. 2006) (rejecting reasoning in various district court opinions "that by declaring a proposed amendment futile, the magistrate judge . . . has decided the amendment fails to state a claim, thus making the decision dispositive," as incompatible with "the magistrate judge's statute, 28 U.S.C. § 636"); Maurice v. State Farm Mut. Auto. Ins. Co., 235 F.3d 7, 9 & n.2 (1st Cir. 2000) (holding that "magistrate judge had the authority to decide the motion to amend outright"). See also Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) ("[A] district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent."); PYCA Indus., Inc. v. Harrison County Waste Water Mgt. Dist., 81 F.3d 1412, 1420-21 (5th Cir. 1996) (describing litigant's "motion to amend its pleading to include additional claims of fraud and conspiracy" as "nondispositive motion"). The tension between these parallel lines of circuit-level precedent regarding a magistrate judge's prerogative to rule on motions not

---

[12](...continued)
No. 3:08CV296-FDW, 2008 WL 5084201, at *1 (W.D.N.C. Nov. 25, 2008) (unpublished) (Whitney, J.); Drye v. Bankers Life and Casualty Co., No. 3:05CV115-MU, 2006 WL 2077562, at *2 (W.D.N.C. July 24, 2006) (unpublished) (Mullen, J.).

-19-

listed in Section 636(b)(1)(A) provides a further basis for the undersigned Magistrate Judge to look to other sources of persuasive authority, such as Judge Thornburg's ruling in Wachovia Bank.

CONCLUSION

This case should be remanded to state court because this Court lacks subject matter jurisdiction. Magistrate judges have statutory authority to enter orders regarding such matters.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Remand (Docket Entry 5) is **GRANTED** and this action is **REMANDED** to state court. The Court stays the remand for 21 days because "[a] party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). If any party files an objection to this Order, the 21-day stay shall continue in effect until further order of the Court, but, if no objections are filed, at the end of the 21-day period, the Clerk shall send a certified copy of this Order to the Clerk of the General Court of Justice, Superior Court Division, for Durham County, North Carolina.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 21, 2010

-20-

Case 1:10-cv-00226-UA-LPA   Document 8   Filed 05/21/10   Page 20 of 20